UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:13-CV-14215-ROSENBERG/LYNCH

DANIEL S. ECHOLS and LORI ELLEN
ECHOLS,

  Plaintiffs,

v.

RJ REYNOLDS TOBACCO CO. individually
and as successor by merger to Brown &
Williamson Tobacco Corporation (a/k/a Brown
& Williamson USA, Inc.) and the American
Tobacco Company (f/k/a The American Tobacco
Company, Inc.), PHILIP MORRIS U.S.A. INC.,
and LORILLARD TOBACCO COMPANY,

  Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court upon the Defendants' Motion to Dismiss the Third Amended Complaint [DE 70]. The Motion has been fully briefed by both sides. The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, Defendants' Motion is granted.

### I. BACKGROUND

The Plaintiffs are Daniel S. Echols and his wife, Lori Ellen Echols. The Plaintiffs' Third Amended Complaint [DE 67] alleges that Daniel Echols, born on December 16, 1951, began smoking cigarettes at the age of 9 in 1960. DE 67 ¶ 10. He continued smoking until 2010 (50 years) despite multiple attempts to stop smoking. *Id.* The Complaint further alleges that Mr. Echols "was hooked on the cigarettes and could not quit," though he tried "several times over the years." *Id.* ¶ 12. He "smoked 20 - 30 cigarettes a day, 140 - 210 a week." *Id.* As to the particular

1

brands he smoked, the Complaint alleges that the Plaintiff smoked Marlboro (Defendant Philip Morris), Winston Lights (Defendant RJ Reynolds), Newport and Kent (Defendant Lorillard), and Doral (Defendant RJ Reynolds). *Id.* ¶ 13.

These cigarettes which Mr. Echols smoked contained nicotine, an addictive substance "designed, manufactured, advertised and marketed by Defendants." *Id.* ¶ 14. Mr. Echols smoked these cigarettes "in sufficient quantities and for a sufficient time period to cause injury in the form of disease and physical illness," including bladder cancer. *Id.* ¶¶ 14–15. Mr. Echols first sought medical help for a symptom of this condition in April 2010. *Id.* ¶ 16.

The Complaint makes numerous allegations as to the deceptive conduct of the Defendants, including allegations of an ongoing conspiracy "to hide the effect and severity of nicotine addiction in cigarettes and also of the carcinogens within the cigarettes that would and do cause serious illness and death." *Id.* ¶ 21. The Defendants' efforts included funding of an "advertising and disinformation campaign" intended to encourage individuals like Mr. Echols to continue to smoke. *See id.* The Defendants continued to promote smoking despite knowing the dangers associated with it as early as the mid-1950s. *Id.* ¶¶ 29, 36; *see also id.* ¶¶ 40–93 (discussing strategies employed by the cigarette companies to market, e.g., low-tar and filter cigarettes as "healthy" alternatives), ¶¶ 94–115 (discussing public health understanding of the risks of "low yield" cigarettes"), ¶¶ 116–19 (discussing marketing of cigarettes towards children and young adults in order to secure "replacement smokers").

In light of the foregoing, the Plaintiffs have brought suit in federal court under 28 U.S.C. § 1332, alleging strict liability (Count I, *id.* ¶¶ 146–55), negligence/gross negligence (Count II, *id.* ¶¶ 156–60), fraud (Count III, *id.* ¶¶ 161–72), conspiracy to commit fraud (Count IV, *id.* ¶¶ 173–79), violation of the Florida Unfair and Deceptive Trade Act (Count V, *id.* ¶¶ 180–83), and

loss of consortium (Count VI, *id.* ¶¶184–86) against all Defendants. The Plaintiffs also request punitive damages on each count. Presently before the Court is Defendants' Motion to Dismiss the Third Amended Complaint [DE 70].

## II.     DISCUSSION

The Defendants argue that the Plaintiffs' Complaint should be dismissed for numerous reasons. The Court first addresses the Defendants' general arguments as to the specificity of the pleadings, then proceeds to analyze each count of the Complaint before concluding with a discussion of punitive damages.

### A.     Specificity of the Pleadings

The Defendants argue that the Plaintiffs' Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). DE 70 at 1. Federal Rule of Civil Procedure 8(a)(2) requires that any claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To comply with Rule 8(a)(2), a complaint must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face where the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). A pleading that, in lieu of specific factual allegations, substitutes "labels and conclusions" or a "formulaic recitation of the elements of a cause of action is insufficient." *Iqbal*, 566 U.S. at 678.

The Plaintiffs' Complaint does not comply with the federal pleading standards outlined above. In 189 numbered paragraphs, it fails to identify with any specificity the years during

which Mr. Echols smoked the Defendants' brands, making it impossible for the Defendants to properly respond to the Complaint. The Plaintiffs allege the following with respect to Mr. Echols's usage of the Defendants' various brands:

> Plaintiff primarily smoked Marlboro, and did so for 15 years (a brand of cigarettes produced by Defendant, Philip Morris [*sic*]. He then primarily smoked Winston Lights for 35 years (a brand of cigarettes manufactured by defendant, RJ Reynolds [*sic*]. He also engaged in smoking menthol and filtered cigarettes such as Newport and Kent (products of Lorillard [*sic*], as well as Doral (a product of RJ Reynolds). Mr. Echols used at least 11 brands manufactured by RJ Reynolds, 3 by Philip Morris and 3 by Lorillard. The principal brands were these.

DE 67 ¶ 13.

> The Plaintiff smoked Marlboro, Winston, Newport, Doral and other brands produced by the Defendants, establishing a clear nexus or relationship between the Defendants and the Plaintiff.

*Id.* ¶ 150 (Count I).

> Relying to his detriment on these untrue and fraudulent representations [made from the 1960s through the 1990s], Daniel Echols smoked unfiltered Camel Cigarettes for several years and eventually switched to filtered Winston Cigarettes.

*Id.* ¶ 167 (Count III).

> Relying to his detriment on these untrue and fraudulent representations [about the "safer" or "less potent" nature of light cigarettes made from the 1960s through the 1990s], Daniel Echols switched to Winston Light Cigarettes, which he smoked for approximately seventeen (17) years.

*Id.* ¶ 169 (Count III)

These are the only statements within the Complaint that allege Mr. Echols's use of Defendants' products, and these allegations are insufficient to support a claim for relief. Plaintiffs do not allege the periods during which Mr. Echols smoked the named brands with any specificity.[1] The Complaint initially states that Mr. Echols smoked for 50 years, and that within

---

[1] There are other troubling inconsistencies in the Plaintiffs' Complaint. For example, in paragraph 13 the Plaintiffs allege that "Mr. Echols used at least 11 brands manufactured by RJ Reynolds, 3 by Philip Morris and 3 by

4

those 50 years he smoked Marlboro for 15 years and "then" Winston Lights for 35 years. *Id.* ¶ 13. (It is worth noting that later in the Complaint, the Plaintiffs allege that Mr. Echols smoked Winston Lights for 17 years, in direct contradiction of this statement. *See id.* ¶¶ 13, 169.) The Court could assume the Plaintiffs' use of the word "then" implies that he smoked Marlboro primarily from 1960 to 1975, then stopped smoking Marlboro and switched to Winston Lights from 1975 to 2010.[2] That still leaves the question of when Mr. Echols smoked the Lorillard brands named in the Complaint (Newport and Kent), and when he smoked Doral and Camel cigarettes. *See id.* ¶¶ 13, 167. Were these brands only smoked during the 35-year period in which Mr. Echols smoked primarily Winston Lights, or were they smoked during the entirety of his 50-year smoking career?

The other allegations in the Complaint are even less clear. Mr. Echols allegedly smoked Camel Cigarettes for "several years" during the 1960s and 1990s. *See id.* ¶ 167. Which years? The Complaint uses a similarly broad range when describing his switch to Winston Lights, stating that he switched in reliance on untrue/fraudulent representations about the "safer" or "less potent" nature of light cigarettes made during the 1960s and 1990s, and that he smoked Winston Lights for 17 years. *See id.* ¶ 169. When did he make the switch? How is this reconcilable with the Complaint's earlier statement that Mr. Echols smoked Winston Lights for 35 years? The Court is left with a number of questions.

---

Lorillard." Yet the Complaint only alleges that Mr. Echols smoked four RJ Reynolds brands (Winston Lights and Doral, ¶ 13; Camel and Winston, ¶ 167), one Philip Morris brand (Marlboro, ¶ 13), and two Lorillard brands (Newport and Kent, ¶ 13). That leaves seven RJ Reynolds brands, two Philip Morris brands, and one Lorillard brand unaccounted for in the Complaint. However, inconsistencies like these, if present alone, would not be sufficient to merit dismissal of the Complaint. The Court simply notes them.

[2] The Plaintiffs may not wish to leave such determinations in the Court's hands. Under this reading of the Plaintiffs' Complaint, if the Court were to concur with the Defendants' assessment of the fraud statute of repose (discussed *infra*) it would be forced to dismiss the fraud claims as to Philip Morris as a matter of law, because Mr. Echols's use of Marlboro—the only Philip Morris brand named in the Complaint—would fall outside the repose period. Thus, it may also benefit the Plaintiffs to allege their claims with more specificity, lest the Court interpret those claims in a way the Plaintiffs did not intend.

The Court does not expect the Plaintiffs to know, down to the day, which brands Mr. Echols smoked when. The Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," however. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). In light of the pleading standards outlined in *Twombly* and *Iqbal*, for an amended complaint to comply with federal pleading standards, the Plaintiffs should state with more specificity the years during which Mr. Echols smoked the Defendants' brands. The Plaintiffs need not state the years during which Mr. Echols smoked each *particular* brand, but they must, at a bare minimum, state the years during which he smoked each Defendant's brands generally, or else the Defendants will be unable to properly respond to the Complaint.

For these reasons, the Court grants the Defendants' Motion to Dismiss [DE 70]. The Plaintiffs' strict liability (Count I), negligence (Count II), fraud (Count III), conspiracy to commit fraud (Count IV), and loss of consortium (Count VI) claims are dismissed without prejudice, as are the Plaintiffs' requests for punitive damages. The Plaintiffs' Florida Unfair and Deceptive Trade Act claim (Count V) is dismissed with prejudice for the reasons stated below.

### B.     The Individual Counts

The Plaintiffs' Complaint merits dismissal for the reasons discussed above. However, this Order also contains a discussion of each individual count below.

#### i.     Strict Liability (Count I)

The Defendants make three arguments as to the Plaintiffs' strict liability claim: first, failure to state a claim in compliance with federal pleading standards; second, failure to allege a specific defect in any cigarettes manufactured by the Defendants—and, consequently, preemption of the Plaintiffs' claims—and third, failure to allege how a specific defect in

cigarettes manufactured by each Defendant was a proximate cause of Mr. Echols's injuries. *See* DE 70 at 3–5.

To successfully state a claim for strict liability, the Plaintiffs must establish (1) the manufacturer's relationship to the product in question, (2) the defect and unreasonably dangerous condition of the product, and (3) the existence of the proximate causal connection between that condition and the user's injuries or damages. *See West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87 (Fla. 1976). As discussed *supra*, the Plaintiffs' Complaint founders on issues of proximate cause; it fails to allege with any specificity the periods during which Mr. Echols smoked each Defendant's cigarettes.[3] The Court thus dismisses the Plaintiffs' strict liability claim without prejudice.

### ii.     Negligence (Count II)

The elements of a cause of action for negligence in a products liability case are: (1) the manufacturer must have a legal duty to design and manufacture a product reasonably safe for use; (2) the manufacturer must fail to comply with that duty; (3) the plaintiff must have an injury that is legally caused by the manufacturer's breach of the duty; and (4) the plaintiff must have suffered damages. *See Indem Ins. of N. Am. v. Am. Aviation, Inc.*, 334 F.3d 1136, 1146 (11th Cir. 2003). As the Defendants argue, and as the Court has noted above, the Plaintiffs' failure to allege specific years during which Mr. Echols smoked each Defendant's cigarettes means he has failed to plead an injury which is legally caused by each Defendant's breach. Count II is thus dismissed without prejudice.

---

[3] Although the issues of proximate cause are the paramount defect in the Plaintiffs' claim, the Court also found the lack of specificity as to the nature of the defect troubling.

### iii. Fraud (Count III) and Conspiracy to Commit Fraud (Count IV)

The elements of a fraud claim under Florida law are: a "(1) false statement of material fact or suppression of truth by the defendant; (2) that the defendant knew the statement was false; (3) the defendant intended the false statement or omission to induce the plaintiff's reliance; and (4) the plaintiff justifiably relied to his detriment." *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122–23 (M.D. Fla. 2009). In addition to pleading a claim for fraud, the Plaintiffs also claim that the Defendants conspired to commit fraud. Any conspiracy claim must be premised on an "actionable underlying tort or wrong." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d Dist. Ct. App. 1997); *see also Marlborough Holdings Group, Ltd. v. Azimut-Benetti*, 505 F. App'x 899, 907 (11th Cir. 2013) (noting under Florida law that a claim of conspiracy to commit fraud fails if the underlying fraud claim is meritless). Because the success of the conspiracy claim is tied to the success of the underlying fraud claim, the Court discusses the fraud claim exclusively below, except as otherwise noted.

The Complaint as it stands makes it impossible for a trier of fact to determine whether Mr. Echols justifiably relied to his detriment on the false statements allegedly made by the Defendants. Although the Complaint goes into more detail as to the Defendants' deceptive conduct and statements than the Defendants' Motion to Dismiss seems to appreciate, that lengthy discussion is irrelevant unless the Complaint properly ties Mr. Echols' reliance on each Defendant's statements to his purchase of each Defendant's products—i.e., unless the Complaint sufficiently alleges detrimental reliance. For this reason, Counts III and, correspondingly, IV are dismissed without prejudice.

The Defendants also argue that the Plaintiffs' fraud claim is barred by the 12-year statute of repose applicable to fraud-based claims, Florida Statute section 95.031(2)(a). The Court does

not need to decide this issue, as the fraud counts are dismissed without prejudice for the reasons stated above. However, the Court notes that the Defendants' Motion to Dismiss states that "the most recent allegation of fraud in Plaintiff's Third Amended Complaint occurred in 1999." DE 70 at 12. The Plaintiffs do not appear to contest this assertion, as their only response to this claim is to state that "[i]t is undisputed that the last act done in furtherance of the tobacco conspiracy occurred no earlier than 1990." DE 71 at 11. We are in the year 2014. If the last act done in furtherance of the conspiracy to commit fraud[4] occurred in 1990, as the Plaintiffs appear to state in their Response, the Plaintiffs' fraud and conspiracy to commit fraud claims would fail even under their own interpretation of the statute of repose.

### iv.    Florida Deceptive and Unfair Trade Practices Act (Count V)

The Defendants argue that the Plaintiffs' Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim fails as a matter of law. DE 70 at 9. This Court agrees. FDUTPA expressly states that it "does not apply to . . . [a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see also, e.g.*, *Taviere v. Precision Motor Cars, Inc.*, No. 8:09-cv-467-T-TBM, 2010 WL 557347, at *5 (M.D. Fla. Feb. 12, 2010); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 329 (S.D.N.Y. 2006). Plaintiffs allege that Mr. Echols relied on "unfair and deceptive trade practices" that caused him to become "severely injured" and suffer "serious injury and illness."

---

[4] It seems as if the Plaintiffs are arguing that acts committed in furtherance of a conspiracy to commit fraud, as opposed to fraudulent statements themselves, are enough to carry a fraud claim into the repose period. *See* DE 71 at 11 (arguing that "[t]he Third District Court and other districts hold that statute of repose does not even apply to claims for fraudulent concealment," but quoting portions of *Frazier v. Philip Morris USA Inc.*, 89 So. 3d 937, (Fla. 3d Dist. Ct. App. 2012), referring to acts done in furtherance of a conspiracy as relevant to the cut-off date).

DE 67 ¶ 183. Because he asserts claims for personal injury, the FDUTPA claim fails as a matter of law and Count V is dismissed with prejudice.[5]

### v.     Loss of Consortium (Count VI)

Loss of consortium is a derivative claim, predicated on the success of the underlying claims of the married individual's spouse. *See Kimbrell v. Paige*, 448 So. 2d 1009, 1013 (Fla. 1984). Because the Court has dismissed each of the underlying claims in the instant action (all, with the exception of Count V, without prejudice), Mrs. Echols's loss of consortium claim is accordingly dismissed without prejudice.

### C.     Punitive Damages

"A claim for punitive damages is not a separate and distinct cause of action; rather it is auxiliary to, and dependent upon, the existence of an underlying claim." *Liggett Grp. Inc. v. Engle*, 853 So. 2d 434, 456 (Fla. Dist. Ct. App. 2003)*, approved in part, quashed in part sub nom. Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006). Because each of the counts in the Complaint has been dismissed (all without prejudice, except for Count V), the Plaintiffs' punitive damages claims are likewise dismissed without prejudice.

### III.    CONCLUSION

For all of the foregoing reasons, the Court finds that the Plaintiffs' Third Amended Complaint [DE 67] fails to state a claim for which relief can be granted. It is therefore

**ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss [DE 70] is **GRANTED**. The Plaintiffs' Third Amended Complaint [DE 67] is **DISMISSED WITHOUT PREJUDICE** as to Counts I, II, III, IV, VI, and punitive damages, and **DISMISSED WITH PREJUDICE** as to Count V. The Plaintiffs have until October 27, 2014 to file an amended

---

[5] Tellingly, the Plaintiffs only respond to Defendants' secondary argument on this claim—namely, that the Complaint fails to comply with federal pleading standards. *See* DE 71 at 9. Because this Court finds the Defendants' first argument dispositive, it need not reach the second.

complaint limited to the claims alleged in Counts I, II, III, IV, and VI. The Plaintiffs may again allege and request punitive damages. Once the Plaintiffs have filed their amended complaint, the Defendants have ten (10) days from the filing date to respond.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 15th day of October, 2014.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE